IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNELL BOLT, | : | CIVIL NO. 3:12-CV-1599 |
| Petitioner, | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| FRANK STRADA, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case

The petitioner in this case is a federal prisoner who has spent much of the past twenty-five years in prison due to his penchant for committing serial bank robberies. In this petition, Bolt seeks to set aside a 2011 parole revocation determination, alleging that the parole commission neglected to provide him with a timely revocation hearing, and further contends that the Bureau of Prisons has failed to accurately calculate his parole violation release date. For the reasons set forth below, it is recommended that this petition be denied.

On December 29, 1986, Rodnell Bolt was convicted and sentenced in the United States District Court for the Western District of Pennsylvania to an aggregate twenty-five year term of imprisonment for armed bank robbery and a firearm offense. (Doc. 6, Ex. 1 Sentence Monitoring Computation Data, as of Sept. 2, 1996.) Following an

initial parole hearing in 1996, the parole commission ordered presumptive parole for Bolt after 138 months, on February 16, 1998. (Id., Ex. 2 Notice of Action, Nov. 1, 1996; Ex. 13 Declaration of Dawn L. Giddings ¶ 5; Attach. 1 Certificate of Parole, Feb. 13, 1998). Bolt was then scheduled to remain under parole supervision from February 16, 1998, until August 15, 2016. (Id., Ex. 3 Certificate of Parole.)

Shortly after he was released on parole, on January 27, 1999, the parole commission issued a warrant charging Bolt with administrative parole violations including the use of illegal drugs, violating the special drug aftercare condition, and failing to report a change in residence. (Id., Ex. 4 Warrant Application; Ex. 13 Giddings Decl. ¶ 7.) Two day later, on January 29, 1999, Bolt was arrested and charged with five counts of bank robbery and one count of postal robbery as a result of a robbery spree committed between November 24, 1998, and January 29, 1999. (Id., Ex. 5 Supplement to Warrant Application; Ex. 13 Giddings Decl. ¶¶ 6, 8-9,Attach. 2 Judgment in a Criminal Case #2:CR99-148; Attach. 3 Judgment in a Criminal Case #2:CR99-148; Attach. 6 Sentence Monitoring Computation Data, as of Sept. 13, 1998.) On September 1, 1999, Bolt was sentenced in the United States District Court for the Western District of Pennsylvania to a 168-month term of imprisonment for the five counts of bank robbery, and 120 months for postal robbery. (Id., Ex. 6 Sentence Monitoring Computation Data, as of Sept. 13, 1998 at 4-5, Ex. 13 Giddings Decl. ¶ 6;

2

Attach. 2 Judgment in a Criminal Case #2:CR99-148; Attach. 3 Judgment in a Criminal Case #2:CR 99-148.)

The parole commission then supplemented its warrant on February 20, 2000, to include parole violations for those criminal charges and asked the Bureau of Prisons to lodge its warrant as a detainer against Bolt's 1999 sentence. (Id., Ex. 5 Supplement to Warrant Application; Ex. 7 Memorandum, Feb. 20, 2000; Ex. 13 Giddings Decl. ¶ 10.) In 2010, the commission conducted a dispositional review of this detainer, and ordered that it remain in place. (Id., Ex. 8 Notice of Action, Apr. 22, 2010.)

Bolt completed service of the 1999 robbery sentences on August 9, 2011. (Id., Ex. 13 Giddings Decl. ¶ 11; Attach. 6 Sentence Monitoring Computation Data.) On August 18, 2011, the commission executed its warrant and 103 days later, on November 29, 2011, conducted a revocation hearing. (Id., Ex. 9 Warrant and Return; Ex. 10 Hearing Summary.) As a result of the hearing, on February 8, 2012, 174 days after he came into commission custody, the parole commission ordered that Bolt's parole be revoked, that he receive no credit for time spent on parole, and that he serve to the expiration of his sentence. (Id., Ex. 11 Notice of Action, Feb. 8, 2012; Ex. 13 Giddings Decl. ¶ 12.) On administrative appeal, the National Appeals Board modified this with regard to a sentence credit, to clarify that nine days Bolt spent in custody, from August 9, 2011, through August 18, 2011, between Bolt's completion of the

3

1999 bank robbery sentence and the execution of the commission's warrant were to be credited towards the parole violation term. (Id., Ex. 12 Notice of Action on Appeal, May 23, 2012; Ex. 13 Giddings Decl. ¶ 13.) The commission explained its decision to Bolt in the following terms:

> You have received credit towards your re-parole guidelines (not credit toward your current sentence) for the 150 ½ months you were incarcerated on your 1999 federal sentence. 28 C.F.R.2.21, 2.47(e)(1); Bowen v. U.S. Parole Commission, 805 F.2d 885, 888 (9th Cir. 1986) (explaining the difference between sentence credit and re-parole guidelines credit); Staege v. U.S. Parole Commission, 671 F.2d 266, 269 (8th Cir. 1982).

Id.

The Bureau of Prisons has computed Bolt's parole violation sentence, as directed by the commission in the Notice of Action and Notice of Action on Appeal. (Id., Ex. 13 Giddings Decl. ¶ 14; Attach. 10 Sentence Monitoring Computation Data.) Bolt presently has a projected release date of December 8, 2023. (Id.) With respect to this Bureau of Prisons' sentence calculation, for inmates like Bolt the Bureau of Prisons has a three-level administrative remedy procedure with respect to inmate complaints which must be completed before an inmate can bring an action if federal court. See 28 C.F.R. § 542, et seq.; (Id., Ex. 18 Giddings Decl. ¶ 16.) Bureau of Prisons records reveal that Bolt has filed no administrative remedies during his federal incarceration. (Id., Ex. 18 Giddings Decl. ¶ 17; Attach. 11 SENTRY Report.)

## II. Discussion

### A. The Exhaustion Doctrine Bars Consideration of The Bureau of Prisons' Sentence Calculation in This Habeas Petition

At the outset, to the extent that Bolt challenges the Bureau of Prisons' sentence calculation, this petition suffers from a fundamental procedural flaw, since the petitioner has failed to properly exhaust his administrative remedies within the federal prison system. Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981). These exhaustion rules serve an important and salutary purpose. The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that Bolt has not fully exhausted his administrative remedies, since Bolt neglected to fully prosecute any grievances relating to this sentence calculation through the three-tier grievance process prescribed by prison regulations. Thus, this case presents the very paradigm of an unexhausted petition. With respect to unexhausted habeas claims like those presented by here, it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals . . . ..' " Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously applying these exhaustion requirements, court have consistently rejected habeas petitions challenging prison disciplinary decisions where the inmate-petitioners have failed to fully exhaust their administrative remedies. See, e.g., Johnson v. Williamson, 350 F. App'x 786 (3d Cir. 2009); Pinet v. Holt, 316 F. App'x 169 (3d Cir. 2009); Moscato v. Federal Bureau of Prisons, 98 F.3d. 757 (3d Cir. 1996).

As this court has previously explained when dismissing a federal prisoner's habeas petition for failure to exhaust administrative remedies:

> In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D.Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. §

> 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. 28 C.F.R. § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. 28 C.F.R. §§ 542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, 2 (M.D.Pa. Sept. 15, 2008)

This exhaustion rule in federal habeas corpus proceedings is also subject to a procedural default requirement. "[A] procedural default in the administrative process bars judicial review because 'the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar.' Sanchez, 792 F.2d at 698. We require exhaustion for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Bradshaw, 682 F.2d at 1052; see also Schlesinger v. Councilman, 420 U.S. 738, 756-57, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975) (exhaustion avoids duplicative proceedings and insures that judicial review will be informed and narrowed); McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657,

1663, 23 L.Ed.2d 194 (1969) (circumvention of administrative process diminishes effectiveness of an agency by encouraging prisoners to ignore its procedures). Requiring petitioners to satisfy the procedural requirements of the administrative remedy process promotes each of these goals." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996)

For these reasons, "a federal prisoner who . . . , fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." Id. This basic legal tenet applies here and is fatal to this aspect of Bolt's habeas corpus petition. With respect to his complaints regarding this sentence calculation Bolt is an inmate who has failed to exhaust his remedies, and now fails to provide cause and prejudice which excuses this earlier procedural default. Therefore, Bolt's unexhausted claims should be dismissed.[1]

---

[1] In any event, it appears that these sentence credit calculation claims advanced by Bolt are meritless. The Bureau of Prisons' calculation carefully follows the decision of the parole commission. That parole commission decision, in turn, awarded some sentencing credit to Bolt, but found that a lengthy parole violator sentence was warranted here because of the grave danger of violent recidivism exhibited by the petitioner, a serial bank robber. This commission decision was within the commission's discretion. See Bowen v. U.S. Parole Com'n, 805 F.2d 885, 888 (9th Cir. 1986) (explaining the difference between sentence credit and reparole guidelines credit); Berg v. U.S. Parole Com'n, 735 F.2d 378, 379 (9th Cir. 1984); Staege v. U.S. Parole Com'n, 671 F.2d 266, 269

## C. Bolt is Not Entitled to Habeas Corpus Relief Due to a Delay in Conducting His Parole Revocation

Finally, Bolt is not entitled to federal habeas corpus relief simply because he alleges that there was a delay in conducting his parole revocation hearing. At the outset, it is clear that the commission may lawfully delay the execution of a parole violation warrant until after completion of the service of a new sentence by the alleged parole violator. Moody v. Daggett, 429 U.S. 78, 87 (1976). Once a prisoner has completed his sentence, normally, "[a]ny alleged parole violator who is summoned or retaken by warrant shall receive a revocation hearing within ninety days of the date of retaking." 18 U.S.C. § 4214(c).

---

(8th Cir. 1982). In this case, the commission imposed Bolt's sentence on February 8, 2012, but modified that sentence to ensure that Bolt received credit against this sentence for the time he spent in custody following completion of his federal bank robbery sentence in August 2011. Thus, the sentence credit calculation undertaken in this case paid full fidelity to the legal principle that a defendant should be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences that has not been credited against another sentence. 18 U.S.C. § 3585(b). Moreover, in reaching this calculation of Bolt's jail time credit, the Bureau of Prisons closely followed both the spirit and the letter of the law, and the guidance it had received from the commission. Consistent with the law, it provided Bolt with proper credit for his prior custody while avoiding one of the evils condemned by the Supreme Court in United States v. Wilson, 503 U.S. 329, 337 (1992), since it "made clear that [the] defendant could not receive a double credit for his detention time." Id. Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides Bolt all the credit he is entitled to receive, this aspect of Bolt's petition for writ of habeas corpus should be denied.

In this case, Bolt's dispositional hearing was conducted within 103 days of Bolt coming into commission custody and Bolt received the commission's decision 174 days after he was remanded to commission custody. However, this brief delay beyond the timetables generally prescribed by law for such hearing does not automatically entitle Bolt to federal habeas corpus relief. Rather, it is well-settled that " 'delay, per se, does not constitute a violation of due process entitling an accused violator to immediate release where the parolee has ... been afforded the revocation hearing and the facts of the violation fairly adjudicated.' McNeal v. United States, 553 F.2d 66, 68 (10th Cir.1977); see also Thomas v. United States Parole Comm'n, Civ. A. No. 92-590, 1992 U.S. Dist. LEXIS 11663, at *6 (D.D.C. Aug. 4, 1992) (same). In order to obtain habeas relief on this due process claim, [a petitioner] must show not only that the delay in holding a revocation hearing was unreasonable, but also that the delay was prejudicial. See Stokes v. Pa. Bd. of Prob. and Parole, Civ. A. No. 1:04-1513, 2005 U.S. Dist LEXIS 44065, at *14 (M.D.Pa. May 9, 2005); Watlington v. Hendricks, Civ. A. No. 04-942, 2006 U.S. Dist. LEXIS 27421, at *28-29 (D.N.J. Apr. 26, 2006)." Coates v. Hogsten, CIV.A.1:07-CV-0424, 2007 WL 3125125 (M.D. Pa. Oct. 24, 2007). Thus:

> In order to establish a due process violation, the petitioner must show that the delay was *both* unreasonable and prejudicial. Id.; see also Parson v. Edwards, 709 F.Supp. 548, 552 (M.D.Pa.1988) (citing Sutherland v. McCall, 709 F.2d 730, 732 (D.C.Cir.1983)). Although the Supreme

10

> Court has not delineated what amount of time is unreasonable, it found that a lapse of two months "would not appear to be unreasonable." Morrissey, 408 U.S. at 488. This court has held that a 163-day delay is not unreasonable. See Wilfort v. Holt, 2006 U.S. Dist. LEXIS 60430, at *6-7, 2006 WL 2474063 (M.D.Pa. Aug. 25, 2006). Judges in the Eastern District Court of Pennsylvania, have also found that delays of up to five months do not violate due process under the Fourteenth Amendment. See e.g., Smith v. Jacobs, 1994 WL 269264, at *4 (E.D.Pa. June 14, 1994) (delay of four months not unreasonable); United States ex rel. Burgess v. Lindsey, 395 F.Supp. 404, 410-11 (E.D.Pa.1975) (five month delay not unreasonable, but delay of nine months was unreasonable).

Kyle v. Lindsay, CIV.A.3:06-0948, 2008 WL 4571871 (M.D. Pa. Oct. 10, 2008). See Allston v. Gaines, 158 F.Supp.2d 76, 81 (D.D.C.2001)(held, a delay of eighty-two days was not unreasonable.)

Judged against these benchmarks, Bolt has not experienced an unreasonable delay in this case. Bolt's revocation hearing was conducted within 103 days, only 13 days past the 90 day period prescribed by statute, and Bolt received the commission's decision 174 days after he was taken into custody, and some 84 days after this 90-day period had elapsed. Since this entire revocation process exceeded this 90-day deadline by less than three months, Bolt cannot show that he has suffered an unreasonable delay in this case. Indeed, Bolt's arguments in this regard fail because they encounter an immutable obstacle: Bolt's revocation is based largely upon the fact that this convicted bank robber was convicted of robbing banks while on parole for bank

11

robbery charges. Since "[a petitioner] must show not only that the delay in holding a revocation hearing was unreasonable, but also that the delay was prejudicial See Stokes v. Pa. Bd. of Prob. and Parole, Civ. A. No. 1:04-1513, 2005 U.S. Dist LEXIS 44065, at *14 (M.D.Pa. May 9, 2005); Watlington v. Hendricks, Civ. A. No. 04-942, 2006 U.S. Dist. LEXIS 27421, at *28-29 (D.N.J. Apr. 26, 2006)," Coates v. Hogsten, CIV.A.1:07-CV-0424, 2007 WL 3125125 (M.D. Pa. Oct. 24, 2007), Bolt's inability to show any conceivable prejudice arising from the timing of this hearing on these compelling facts is fatal to his petition for writ of habeas corpus and requires that we recommend denial of this petition.

### III. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local

Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of June 2013.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
